**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **WILLIAM VASSELL SERVICES, INC.** | ) ) ) | Case No.: 15-36256(CGM) |
| | ) | |
| Debtor. | ) | Chapter 11 |
| _____/ | | |

**FINAL ORDER AUTHORIZING DEBTOR TO: AUTHORIZING DEBTOR TO: (I) MAINTAIN ITS EXISTING FACTORING AGREEMENT (AS AMENDED); (II) GRANTING J & D FINANCIAL CORPORATION ADEQUATE PROTECTION IN THE FORM OF FIRST PRIORITY REPLACEMENT LIENS ON PROPERTY OF THE DEBTOR'S ESTATE PURSUANT TO BANKRUPTCY CODE SECTIONS 361, 363 AND 364; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF NUNC PRO TUNC[1]**

William Vassell Services, Inc., the debtor and debtor-in-possession ("Debtor") with the consent of its prepetition factor, J & D Financial Corporation ("J&D"), pursuant to Bankruptcy Rules 4001(b)(1)(B), (c)(1)(B), and (d)(1)(B), Local Bankruptcy Rules 4001-1 and 4001-2, and the Court's Guidelines for Financing Requests, General Order No. M-274, moved by motion dated July 7, 2015 to: (I) Authorize the Debtor to Maintain its Existing Factoring Agreement (as amended), and Continue to Sell its Accounts Post-Petition and Incur Credit; (II) Grant J&D Adequate Protection in the Form of Replacement Liens on Property of the Debtor's Estate Pursuant to Bankruptcy Code Sections 361, 363 and 364; (III) Modify the Automatic Stay; and (IV) Grant All Such Further Relief as is Just and Proper, *Nunc Pro Tunc* ("Motion"). A preliminary hearing was held on the Motion on July 8, 2015 and on July 13, 2015 the Court entered an Interim Order Authorizing Debtor to: (I) Maintain its Existing Factoring Agreement; (II) Granting J & D Financial Corporation Adequate Protection in the Form of First Priority Replacement Liens on Property of the Debtor's Estate Pursuant to

---

[1] Certain capitalized terms in this Interim Order shall have the same meaning as they are given in the Motion.

Bankruptcy Code Sections 361, 363 and 364; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief Nunc Pro Tunc [ECF No. 15] ("Interim Order").  A final hearing was held on August 11, 2015 at 11:00 a.m., ("Final Hearing") and upon the prior pleadings filed in this matter, the record taken at the Final Hearing and no objections to the Motion having been filed, the Court entered this Order ("Final Order").

**THE COURT HAVING DETERMINED THAT:**

(a)    the Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense;

(b)    the Debtor is unable to obtain credit secured by security interests or liens junior to the existing security interests on the Collateral (defined below), pursuant to sections 364(c)(2) or (3) of the Bankruptcy Code;

(c)    the Debtor is unable to obtain secured credit on as favorable a basis, except under the terms and conditions provided in this Final Order;

(d)    J&D, the Debtor's prepetition factor, is willing to purchase the Debtor's Accounts and make advances and extend financing to the Debtor only upon the conditions contained in the Amended Factoring Agreement and the Rider (collectively, the "Post-Petition Agreements");

(e)    it is in the best interests of the Debtor's estate that J&D be allowed to purchase the Debtor's Accounts, and for J&D to be permitted to make advances and other financial accommodations to the Debtor under the terms and conditions set forth herein, to prevent a deleterious impact on the Debtor's business, assets or opportunity to reorganize;

(f)    the purchase and sale of the Accounts and extension of credit under the Post-Petition Agreements is in good faith and J&D is entitled to the protection afforded pursuant to Bankruptcy Code § 363(m);

(g)    the credit and financial accommodations to be extended under the Post-Petition Agreements are being extended by J&D in good faith and J&D is entitled to the protection afforded pursuant to section 364(e) of the Bankruptcy Code;

(h)    a hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) and proper notice of the Motion, the interim and now final hearing was given;

(i)     consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§157(b)(2)(A), (D), (G), (K) and (M);

(j)     this Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§157 and 1334;

(k)     good and sufficient cause exists for the granting of the Motion on a final basis; and

(l)     the Debtor has transmitted the Motion and proposed form of Order to all parties-in-interest as required under the Bankruptcy Code and Rules.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.     The Debtor is hereby authorized to:

1.1     Operate under the Post-Petition Agreements, to execute, deliver, and perform all other documents, instruments, and agreements necessary to effectuate and carry out the terms of this Final Order and the Post-Petition Agreements are hereby approved in all respects.

1.2     Without limitation to the authorization set forth in Section 1.1 above, the Debtor is further authorized, pursuant to sections 363(b)(1), (d), (e) and (f), to sell to J&D the Debtor's post-petition Accounts (as defined in the Motion) which, upon purchase by J&D, shall be deemed Purchased Accounts (as defined in sections 2, 3 and 1.1.34 of the Amended Factoring Agreement) and J&D is authorized to make Advances up to the amount set forth in the Debtor's attached budget, and in its sole and exclusive discretion, over-advances, and to provide any other financial accommodations to the Debtor under the Post-Petition Agreements, subject to the terms and conditions thereof.

1.3     The Debtor shall at no time during this Chapter 11 Case be permitted to use any Cash Collateral, as defined under section 363 of the Bankruptcy Code, to the extent that the source of such Cash Collateral constitute proceeds of Purchased Accounts or non-purchased

accounts. Notwithstanding the preceding sentence, and for the limited purpose of this Final Order, the purchase price Advances that J&D makes to the Debtor in exchange for its purchase of the Purchased Accounts shall not constitute or qualify as Cash Collateral, and the Debtor may use the purchase price Advances in accordance with sections 363(c)(1) and (d). In the event, although each Account Debtor is expected to be notified otherwise, that the Debtor comes into possession of any proceeds of Purchased Accounts or non-purchased accounts, the Debtor shall remit any proceeds of Purchased Accounts or non-purchased accounts directly to J&D, in kind, within four (4) business days and without depositing same.  Effective immediately upon the entry of this Final Order, J&D shall be entitled to retain and apply all collections, remittances, and proceeds of prepetition and post-petition Purchased Accounts and non-Purchased Accounts to the repayment of the Debtor's post-petition and prepetition obligations, which includes all prepetition obligations of the Debtor arising from the purchase price Advances made by J&D to or for the benefit of the Debtor of whatever kind or nature before the Petition Date ("Pre-Petition Obligations").

1.4    J&D's Pre-petition Obligations shall be a fully allowed secured claim in the amount of $302,611.53. The Debtor shall be deemed to have waived any right to contest J&D's unfettered ownership rights in the prepetition and post-petition Purchased Accounts and its security interest in its other Collateral, to prevent or impair J&D's rights to retain payment on all such Purchased Accounts, or otherwise assert against J&D any of the avoiding powers available to a Debtor or any successor chapter 7 or chapter 11 trustee ("Trustee") under the Bankruptcy Code, including those powers that may arise under Bankruptcy Code §§ 544 through 552.  The Debtor also agrees to waive any claims, causes of action, or defenses that might

belong to the estate that effect J&D's exclusive right to receive and collect all account debtor payments arising from the Purchased Accounts J&D purchased from the Debtor prepetition.

2.      Pursuant to section 364(d)(1) of the Bankruptcy Code, as security for all purchase price Advances made by J&D to or for the benefit of the Debtor arising on or after the Petition Date, as well as any other obligations owing to J&D under the Post-Petition Agreements (the "Post-Petition Obligations"), J&D is hereby indefeasibly granted, a valid, binding, enforceable and perfected first and senior ownership interest in all Purchased Accounts as well as a first and senior priority security interest in all of the following property and assets of the Debtor acquired or arising on or after the commencement of the Bankruptcy Case without J&D having to take or satisfy any additional matters:  all of the Debtor's now owned and hereafter acquired Accounts, Chattel Paper, Deposit Accounts, Inventory, Equipment, Instruments, Investment Property, Documents, Letter of Credit Rights, Commercial Tort Claims, and General Intangibles, Supporting Obligations and any sums maintained by Factor that are identified as payable to Client from the Reserve Account (collectively, the "Collateral").

3.      J&D's first and senior security interest in the Collateral securing the Debtor's Post-Petition Obligations shall also have priority in payment over any administrative expenses or charges that are or may be incurred after the filing of the Petition, including, without limitation, expenses, charges or claims of the kind specified in sections 503(b), 506(c), and 507(a) and (b) of the Bankruptcy Code (specifically excluding recoveries from actions brought pursuant to Bankruptcy Code §§ 506(c), 544, 545, 547, 548, 549, 550, 553, and 724), except for the Carve-Out set forth in Section 7, below.

4.      Pursuant to sections 363(b), (c) and (e) of the Bankruptcy Code, and in addition to all other protections afforded to J&D under this Final Order, J&D is also hereby indefeasibly

granted, a valid, binding, enforceable and perfected first and senior security interest in all of the

Debtor's Collateral arising or acquired after the commencement of this case, including Cash

Collateral, as adequate protection to secure the Debtor's Pre-Petition Obligations to the extent

that due to the use of any Collateral by the Debtor, J&D suffers a decrease in the value of J&D's

interest in the Debtor's prepetition assets.

5.      Unless J&D shall have first given its prior written consent, any subsequent order that

authorizes: (i) the Debtor's use of Cash Collateral in violation of the provisions of this Final Order,

(ii) the use, sale or lease, other than in the ordinary course of business, of any property of the Debtor

in which J&D has a security interest, (iii) the Debtor to obtain credit or incur any indebtedness that is

(A) secured by a security interest or lien in property that constitutes part of J&D's Collateral or (B)

entitled to administrative priority status which may interfere with the security interests, priorities or

adequate protection rights provided to J&D herein, or (iv) the enforcement by any creditor of a claim,

the effect of which will authorize the seizure or application of any of the Collateral or proceeds

thereof to be applied to such creditor's obligations, shall constitute an Event of Default under the

Post-Petition Agreements.

6.      From the date of the entry of this Final Order through the date of confirmation of a

plan (after which this provision shall cease), J&D shall be entitled to be reimbursed all of its

prepetition and post-petition reasonable attorneys' fees and costs in accordance with the following

procedure:  J&D or its counsel shall transmit a copy of counsel's redacted monthly invoices or

statements, after removing any details, confidential information and/or attorney client privileged

communications, for fees and costs to the United States Trustee ("UST"), counsel for any duly

appointed unsecured creditor's committee, if any, and Debtor's counsel for their review each month.

Unless a written objection (specifying the line item of the bill objected to, the reason for the objection

and a proposed resolution of the objection) is received by J&D's counsel within fourteen (14) days of submission of each monthly statement to the above stated parties, J&D shall automatically be entitled to charge Debtor's Reserve Account or demand payment for the total aggregate amount of attorneys' fees incurred which balance shall be carried over from month to month.  To the extent any such party-in-interest fails to timely deliver a written objection, such party-in-interest shall be deemed to have forever waived any and all objections that may have otherwise been asserted.

7.      The attorneys' fees incurred by the Debtor's counsel and any duly appointed committee of unsecured creditors, and fees payable to the Bankruptcy Court or the UST under 28 U.S.C. § 1930 shall be entitled to priority in payment over Debtor's Post-Petition Obligations only to the extent of a sinking-fund that Debtor shall create solely and exclusively from setting aside three percent (3%) of all purchase price Advances (as defined in the Factoring Agreement) in a separate account ("Carve-Out"), to compensate the Debtor's attorney's professional fees any duly appointed committee of unsecured creditors, and fees payable to the Bankruptcy Court or the UST under 28 U.S.C. § 1930 ("Carve-Out").  The Carve-Out shall only be distributed upon Order of the Bankruptcy Court .  J&D shall have no exposure for any portions of any professional fees or expenses of any kind, including but not limited to Section 506(c)  of the Bankruptcy Code, but for its deposit of such Carve-Out percentage of each Advance as described herein.  The provisions of this paragraph shall supersede any other provisions to the contrary in this Final Order.

8.      The Debtor is specifically directed, before sending any Invoice to an Account Debtor which may or will constitute a Purchased Account, as required by Section 9.1 of the Factoring Agreement, to clearly state in a manner satisfactory to J&D that payment of the Debtor's Purchased Account has been assigned, and is factored by and is payable exclusively to J&D.

9.      J&D may, in its discretion, take any appropriate action it deems advisable to perfect any and all ownership rights in the Purchased Accounts and security interests in the collateral granted pursuant to the Post-Petition Agreements and this Final Order; including the filing of UCC financing statement(s) or other document(s) with any filing authority, provided however, that J&D shall not be required to do so in order to achieve perfection.  If J&D, in its sole discretion, elects to file any UCC financing statements or other documents with respect to such ownership interest in the Purchased Accounts or security interests and liens in the Collateral, the Debtor shall be deemed to have authorized the filing thereof and same shall be deemed to have been perfected at the time and on the date of commencement of this Chapter 11 case, or as of the date of the filing of any previously filed financing statement, whichever is earlier.

10.      The protections afforded to J&D under the Post-Petition Agreements and this Final Order and any actions taken pursuant hereto shall survive the entry of any orders which may subsequently be entered in this case and such ownership of the Purchased Accounts and security interests, liens and interests in any of the Collateral recognized or granted to J&D under the Post-Petition Agreements and this Final Order shall continue in this and any superseding Chapter 7 case under the Bankruptcy Code.  Moreover, J&D's ownership of the Purchased Accounts and security interests, liens, and interests in the Collateral shall maintain their priority as provided by this Final Order until all the Post-Petition Obligations have been satisfied in full; and the time of payment of any and all of the Obligations arising out of or incurred pursuant to the Post-Petition Agreements shall not be altered or impaired by any plan of reorganization, whether proposed by Debtor or any other party-in-interest.

11.      The Post-Petition Obligations of the Debtor to J&D under the Post-Petition Agreements shall not, in whole or in part, be discharged by the entry of any order in this case

pursuant to a confirmed plan and the operation of Section 1141(d)(4) of the Bankruptcy Code, unless and until J&D is paid in full prior to or concurrently with the entry of such order confirming a plan of reorganization.

12.    In the event of the occurrence of an Event of Default (as defined by Section 11.1 of the Amended Factoring Agreement and section 9.1 of the Rider, and after negative notice to the Debtor, J&D shall have the right (in addition to all of its other rights under the Post-Petition Agreements) free of the restrictions of Section 362 of the Bankruptcy Code and any injunction issued that may otherwise be allowed under Section 105 of the Bankruptcy Code or other applicable law or rule, to file with the Court, after seven (7) days prior written notice to the Debtor, the twenty (20) largest unsecured creditors of the Debtor (or if an Official Committee of Unsecured Creditors has been appointed, to counsel to such Committee), and to the UST, a proposed order granting full and complete relief from the automatic stay under Section 362 of the Bankruptcy Code authorizing J&D to pursue any and all rights as described herein and directing the Debtor (or any superseding Trustee) to immediately surrender and deliver peaceful possession of all the Collateral to J&D.  In addition, to the extent any monetary obligations (including expenses and attorney's fees) are owed to J&D, any and all account debtor payments and proceeds realized upon the sale, liquidation, collection or disposition of the Collateral shall be paid to J&D free and clear of any claim or charge, whether arising out of or based upon section 506(c) or 522(b) of the Bankruptcy Code, or otherwise, and no costs or expenses of administration which have or may be incurred in Debtor's Chapter 11 Case, any conversion of the Debtor's Chapter 11 Case pursuant to Section 1112 of the Bankruptcy Code, or pursuant to Section 506(c) of the Bankruptcy Code, or in any future proceedings or cases related hereto, shall be charged against J&D, its claims, or the Collateral, without the prior express written

consent of J&D, and no such consent shall be implied from any other action, inaction or acquiescence by J&D.

13.    No Order entered in respect to any relief sought under Section 1112 of the Bankruptcy Code including any order converting the Debtor's Chapter 11 case, the effect of which shall constitute an Event of Default under the Post-Petition Agreements, shall be submitted to this Court for entry unless such Order expressly provides that J&D receive the relief to which J&D, under this Final Order, is entitled upon an Event of Default.

14.    In the event of the occurrence of an Event of Default (as defined by Section 11.1 of the Factoring Agreement and section 9.1 of the Post-Petition Rider to the Factoring Agreement), and after five (5) days Notice to the Debtor, the Debtor's right to use Advances in accordance with any interim or final Order shall immediately cease (provided that the Debtor's use of Advances during the five (5) days after receiving such Notice of default conforms to any budget in effect).

15.    Any committee appointed under section 1102 of the Bankruptcy Code and other parties in interest shall have up to and not more than sixty (60) days from the date of the entry of this Final Order granting the Motion, to undertake an investigation of the facts relating to J&D's ownership rights in the prepetition Purchased Accounts (as defined in the Amended Factoring Agreement) that have been sold to J&D, and/or the validity, enforceability, priority of the liens and security interest granted to J&D in the Debtor's Collateral, including non-purchased accounts, or the amount of J&D's prepetition claim against the Debtor that arose before the commencement of the Bankruptcy Case.   If within sixty (60) days of the entry of this Final order granting the Motion the parties listed in the preceding sentence choose not to file a motion or commence a proceeding with the Bankruptcy Court contesting, or otherwise seeking a declaration of J&D's ownership rights in the prepetition Purchased Accounts, and/or the validity, enforceability, priority of the liens and security

interest granted to J&D in the Debtor's Collateral, including non-purchased accounts, or the amount of J&D's prepetition claim against the Debtor that arose before the commencement of the Bankruptcy Case, all parties shall be deemed to be barred, waived and/or estopped from: (a) contesting J&D's ownership rights in the prepetition Purchased Accounts sold to J&D, (b) seeking to prevent or impair J&D's rights to retain payment on all such Purchased Accounts, sold to J&D, and (c) contesting the validity, enforceability, priority of the liens and security interest granted to J&D in the Debtor's Collateral, including non-purchased accounts, or the amount of J&D's claim against the Debtor that arose before the commencement of the Bankruptcy Case.

16.    J&D shall, pursuant to the Post-Petition Agreements, have the right, on reasonable oral notice to the Debtor, at any time during Debtor's normal business hours, to perform a field audit of Debtor's books, accounts, checks, orders, invoices, correspondence and other records of the Debtor and Debtor shall make all of same available to J&D and its representatives for such purposes.

17.    This Court finds that the terms of the Post-Petition Agreements between the Debtor and J&D have been negotiated in good faith and at arm's length between the Debtor and J&D, who are both represented by counsel, and any Advances or other financial accommodations which are made by J&D to the Debtor pursuant to the Post-Petition Agreements shall at all times be deemed to have been extended in good faith, as the term is used in Sections 363(m) and 364(e) of the Bankruptcy Code, and J&D shall be entitled to the full protection of Sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  Accordingly, if this Final Order or any of the provisions of this Final Order are hereafter modified, vacated or stayed, such modification, vacatur or stay shall not affect: (a) the validity of the Post-Petition Obligations incurred by the Debtor to J&D prior to the effective date of such modification, vacatur or stay, or (b) the validity or enforceability of any

ownership interest of J&D in the Purchased Accounts or any security interest, lien or priority in the Collateral authorized or created hereby or pursuant to the Post-Petition Agreements.  Notwithstanding any such order that may modify, vacate or stay this Final Order, any Post-Petition Obligations incurred by the Debtor to J&D prior to the effective date of such modification, vacatur or stay order shall be governed in all respects by the provisions of this Final Order, and J&D shall be entitled to all the rights, remedies, privileges and benefits granted herein and pursuant to the Post-Petition Agreements with respect to all such Post-Petition Obligations.

18.     Pursuant to Bankruptcy Rule 6004(h), the terms of this Final  Order in respect to authorizing a sale of the Debtor's accounts shall be deemed immediately effective and enforceable and not stayed until the expiration of fourteen (14) days.

19.     If there is any conflict between this Final Order and the Post-Petition Agreements, the terms and provisions of this Final Order shall control.

20.     The Clerk of this Court is directed to give timely notice of the entry of this Final Order to all parties-in-interest in this case in accordance with Federal Rule of Bankruptcy Procedure 4001(d).

21.     Notwithstanding anything to the contrary in this Final Order, the factoring agreement and/or its amendments: (i) the post-petition liens granted to secure any pre-petition indebtedness owing to J&D have the same validity, priority enforceability and extent as the liens that existed on the Petition Date, (ii) any account debtor payments that J&D collects after the Petition Date pursuant to this Order in satisfaction of the Debtor's prepetition indebtedness owing to J&D shall be accounted for and subject to reapplication in the event that the UST or any party in interest obtains a subsequent Order determining J&D's prepetition liens against the Debtor are invalid or unenforceable, (iii) all liens granted to J&D pursuant to Sections 2 through 4 above, shall not extend to recoveries made on

behalf of the estate in connection with any avoidance actions under Chapter 5 of Title 11 of the Bankruptcy Code, (iv) the estate shall not be deemed to have released, indemnified or waived rights against J&D, with respect to fraud, gross negligence, criminal conduct, violation of securities laws or other Federal statutes, if any,; and (v) that relief from the stay shall only be granted upon entry of an order by the Court.

No Objection:

United States Trustee

By:____/s/ Eric Small, Esq._____



**Dated: August 13, 2015**
      **Poughkeepsie, New York**

**/s/ Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**